1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINWOOD SUTTON, | Case No. 14-CV-2008-BAS (JMA) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 16] AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 17]** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Linwood Sutton ("Plaintiff") seeks judicial review of Defendant Acting Social Security Commissioner Carolyn W. Colvin's ("Defendant") determination that he is not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court recommends Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

## I.  BACKGROUND

Plaintiff, a resident of Vista, California, was born on January 7, 1951. (Admin. R. at 47.)  He graduated from high school and served eight years

in the Marine Corps.  (Id. at 28-29, 36.)  He has worked in the past for moving companies, in a plastic sheeting factory, as a general laborer, and as a janitor at Sea World.  (Id. at 30-36, 228.)  He last worked as a bell ringer for the Salvation Army in 2011, but that was seasonal work only and he otherwise had not worked since 2005.  (Id. at 29-30, 187-89.)  In applications for DIB and SSI filed on August 4, 2011, Plaintiff alleged a disability onset date of December 26, 2003 due to knee issues.  (Id. at 160-77, 206-09.)  Plaintiff's applications were denied initially on November 7, 2011 and upon reconsideration on March 29, 2012.  (Id. at 85-90, 96-100.) On April 9, 2012, Plaintiff requested an administrative hearing.  (Id. at 102-03.)  A video hearing was conducted on March 22, 2013 by Administrative Law Judge ("ALJ") John D. Moreen, who determined on May 20, 2013 that Plaintiff was not disabled.  (Id. at 6-16.)  Plaintiff requested a review of the ALJ's decision; the Appeals Council for the Social Security Administration ("SSA") denied Plaintiff's request for review on June 26, 2014.  (Id. at 1-3.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.  MEDICAL EVIDENCE

### A.   Vista Community Clinic (Treating Provider)

On June 7, 2011, Plaintiff presented to Donald Ong, M.D. of the Vista Community Clinic with a complaint of left knee pain.  (Id. at 296-98.) Plaintiff reported he had been hurt at work in 2000, had arthroscopic surgery in 2004 which showed ligament injury, and had not had any follow-up, even though he experienced on and off pain since then.  (Id. at 296.) Dr. Ong diagnosed a sprain of the medial collateral ligament, prescribed ibuprofen, and advised Plaintiff to obtain insurance so he could request an MRI.  (Id. at 297.)

On July 2, 2011, Plaintiff returned to the Vista Community Clinic for

1  an office visit with Nurse Practitioner Charles Gentzsch.  (Id. at 293-95.)

2  Plaintiff described his left knee pain as sharp and stated the pain was

3  aggravated by bending.  (Id. at 293.)  Nurse Gentzsch observed swelling,

4  mild pain with motion, and post-surgical scars on Plaintiff's left knee, and

5  provided Plaintiff with a note indicating he would be restricted to light or

6  limited work for two weeks.  (Id. at 292, 294.)

7  **B.    Phong T. Dao, D.O. (Examining Physician)**

8          Dr. Phong T. Dao conducted an internal medicine evaluation of

9  Plaintiff on October 17, 2011 at the request of the state Department of

10  Social Services.  (Id. at 282-87.)  Plaintiff advised Dr. Dao he had

11  experienced left knee pain since 2002 when he fell and injured his knee.

12  (Id. at 282.)  He had surgery about eight months after the incident, which

13  had improved the knee pain until recently, when he noted increasing left

14  knee pain and occasional swelling of the knee with prolonged standing and

15  walking in June 2011.  (Id.)  At the time of the examination, the pain was an

16  "aching, throbbing, sharp" pain that occurred intermittently.  (Id. at 282-83.)

17          On examination, Dr. Dao noted tenderness to palpation of the medial

18  aspect of the left knee.  (Id. at 285.)  An x-ray of the left knee showed early

19  osteoarthritis.  (Id. at 286, 288.)  Dr. Dao further noted Plaintiff ambulated

20  with a slight limp putting almost all of his weight on the right knee.  (Id. at

21  286.)  Dr. Dao diagnosed degenerative joint disease of the left knee.  (Id.)

22  He opined Plaintiff could lift, carry, push, or pull 50 pounds occasionally

23  and 25 pounds frequently, could stand or walk for 6 hours in an 8 hour

24  workday, could sit with no limitation, and could frequently climb, stoop,

25  kneel, and crouch.  (Id. at 286-87.)

26  / /

27  / /

28  / /

## III.  THE ADMINISTRATIVE HEARING

### A.     Plaintiff's Testimony

The ALJ conducted an administrative hearing on March 22, 2013. (Id. at 25.)  Plaintiff testified much of his past work has been seasonal and he has not applied for full-time work since 1986 or 1987 because he has a felony on his record from over thirty years ago.  (Id. at 36-37.)  He has found people continue to think of him as a felon.  (Id. at 36.)  He testified he is unable to work because of left knee problems.  (Id. at 37.)  He spends his time babysitting his granddaughter, and performs housework including vacuuming and washing dishes.  (Id. at 38.)  He does not have a driver's license and takes the bus to get around town.  (Id. at 39.)

Plaintiff testified he is able to stand for four hours, after which he experiences a tingling sensation in his knee and has to get off his feet for at least an hour and a half.  (Id. at 39-40.)  He does not have any problems with sitting.  (Id. at 40.)  He grew tearful during his testimony and explained that talking about his background and being unable to be hired for jobs as a result of it is emotional for him.  (Id. at 40.)  He does not have friends he sees socially, because the friends he used to see have felony records.  (Id. at 41.)  He believes he could lift 20-30 pounds at a job because that would not cause his knee to bend very much, but would have problems squatting down.  (Id.)

### B.     Vocational Expert's Testimony

The vocational expert ("VE"), Jane Haile, identified Plaintiff's past relevant work as contribution solicitor (light, unskilled work), material handler (heavy, semi-skilled work), and winder operator (heavy, unskilled work).  (Id. at 42.)  In response to a hypothetical posed by the ALJ, the VE testified a person of Plaintiff's age, education, and background, who could occasionally lift 50 pounds and frequently lift 25 pounds, stand for 6 hours

4

in an 8 hour day, and sit for 6 hours in an 8 hour day, could perform the

work of a contribution solicitor, but not the other two jobs.  (Id. at 42-43.)

There are no full-time contribution solicitor jobs that exist, as they are

temporary, seasonal jobs.  (Id. at 43.)  The VE testified there are medium

unskilled jobs in the local or national economy an individual such as

Plaintiff could perform, including a hospital cleaner, store laborer, and hand

packager.  (Id. at 43-44.)  The VE further testified a person who could

stand for only 4 hours at a time and then needed to sit for 2 hours, and who

could lift 20-30 pounds, could not perform medium work and would be

limited to light level work.  (Id. at 44.)

## IV.  THE ALJ DECISION

After considering the record, ALJ Moreen made the following

findings:

. . . .

2.    The claimant has not engaged in substantial gainful activity
      since December 26, 2003, the alleged onset date [citations
      omitted].[1]

. . . .

3.    The claimant has the following severe impairment[]:  early
      osteoarthritis of the left knee [citations omitted].

. . . .

4.    The claimant does not have an impairment or
      combination thereof that meets or medically equals the
      severity of one of the listed impairments in [the Social
      Security regulations].

. . . .

5.    After careful consideration of the entire record, I find that the

---

[1]In making this finding, the ALJ found Plaintiff's earnings of $7,801.50 in
2003, $102.50 in 2004, and $6,171.72 in 2005 did not meet substantial gainful
activity level for the years in which they were earned.  (Admin. R. at 11.)

claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R 404.1567(c) and 416.967(c), he can lift 50 pounds occasionally, 25 pounds frequently; can stand/walk for six hours out of an eight hour day; can sit for six hours out of an eight hour day; and can frequently balance, crouch, crawl, kneel, stoop or climb.

. . . .

6.   The claimant is unable to perform any past relevant work [citations omitted].

. . . .

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform [citations omitted].

. . . .

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2003, through the date of this decision [citations omitted].

(Id. at 11-16.)

## V.  STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show:  (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C. § 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  Id.  Further, the applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432

(9th Cir. 1995).

## A.   <u>Sequential Evaluation of Impairments</u>

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled."  The five steps are as follows:  (1) Whether the claimant is presently working in any substantial gainful activity.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step two.  (2) Whether the claimant's impairment is severe.  If not, the claimant is not disabled.  If so, the evaluation proceeds to step three.  (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments.  If so, the claimant is disabled.  If not, the evaluation proceeds to step four.  (4) Whether the claimant is able to do any work he has done in the past.  If so, the claimant is not disabled.  If not, the evaluation continues to step five.  (5) Whether the claimant is able to do any other work.  If not, the claimant is disabled.  Conversely, if the Commissioner can establish there are a significant number of jobs in the national economy the claimant can do, the claimant is not disabled.  20 C.F.R. § 404.1520; <u>see</u> <u>also</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## B.   <u>Judicial Review</u>

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Commissioner's final decision should not be disturbed unless:  (1) The ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole.  <u>Schneider v. Comm'r Soc. Sec. Admin.</u>, 223 F.3d 968, 973 (9th Cir. 2000); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such

1  relevant evidence as a reasonable mind might accept as adequate to

2  support a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.

3  1995).  The Court must consider the record as a whole, weighing both the

4  evidence that supports and detracts from the Commissioner's conclusion.

5  <u>See</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001); <u>Desrosiers v.</u>

6  <u>Sec'y of Health & Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988).  "The

7  ALJ is responsible for determining credibility, resolving conflicts in medical

8  testimony, and for resolving ambiguities." <u>Vasquez v. Astrue</u>, 572 F.3d

9  586, 591 (9th Cir. 2009) (citing <u>Andrews</u>, 53 F.3d at 1039).  Where the

10  evidence is susceptible to more than one rational interpretation, the ALJ's

11  decision must be affirmed.  <u>Id.</u> at 591 (citation and quotations omitted).

12      Section 405(g) permits this Court to enter a judgment affirming,

13  modifying, or reversing the Commissioner's decision.  42 U.S.C.A. §

14  405(g).  The matter may also be remanded to the SSA for further

15  proceedings.  <u>Id.</u>

16

17  **VI.  DISCUSSION**

18      Plaintiff contends the ALJ committed error by failing to articulate

19  sufficient reasons for discrediting his symptom testimony and finding him

20  not credible.  (Pl.'s Mem. at 3-12.)

21      In determining a claimant's residual functional capacity[2] at steps four

22  and five of the sequential evaluation process,  the ALJ must consider all

23  relevant evidence in the record, including medical records, lay evidence,

24  and "the effects of symptoms, including pain, that are reasonably attributed

25 _____

26  [2]Residual functional capacity ("RFC")  is defined as "the most you can still
   do despite your limitations."  <u>See</u> 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. §

27  416.945(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to
   do sustained work activities in an ordinary work setting on a regular and

28  continuing basis, ... mean[ing] 8 hours per day, for 5 days a week, or an
   equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *2 (emphases
   omitted).

14cv2008

to a medically determinable impairment."  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p, 1996 WL 374184, at *5).  "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."  SSR 96-8p, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1529(c)(3).  When considering a claimant's subjective symptom testimony, "if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins, 466 F.3d at 883 (9th Cir. 2006) (citing SSR 96-7p, 1996 WL 374186, at *1).  "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective evidence."  Id.  Rather, an ALJ may only find a claimant not credible by making specific findings as to credibility and stating clear and convincing reasons to discount the claimant's subjective symptom testimony.  Id.; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Garrison, 759 F.3d at 1014-15.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible for the following reasons:  (1) Plaintiff's daily activities are not limited to the extent one would expect given his complaints of disabling symptoms and limitations; (2) Plaintiff has not received the type of medical treatment one would expect for an individual claiming restrictive work limitations; (3) There was a lack of objective medical evidence in the record to support Plaintiff's allegations of severe limitations; (4) Plaintiff provided contradictory information about whether he had worked since his alleged

onset date; and (5) Plaintiff's work history raises a question whether his continuing unemployment is actually due to medical impairments.  (Admin. R. at 13-14.)

It is proper for an ALJ to consider the claimant's daily activities in making his credibility determination.  <u>See</u>, <u>e.g.</u>, <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms).  "One does not need to be 'utterly incapacitated' in order to be disabled."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).  "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  <u>Fair</u>, 885 F.2d at 603.  Only if a claimant's level of activities is inconsistent with his claimed limitations would activities of daily living have any bearing on the claimant's credibility.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Here, Plaintiff's daily activities, namely, babysitting his granddaughter and performing housework, including dishes and vacuuming, were not inconsistent with his testimony that he is able to stand for 4 hours, sit without limitation, and lift 20-30 pounds.  Therefore, Plaintiff's daily activities do not provide a basis for the ALJ to find Plaintiff not credible.  Nonetheless, Plaintiff's testimony about his daily activities does not necessarily help him establish disability, either, as it is not inconsistent with an ability to function in a workplace environment. Therefore, this factor weighs neither for nor against the ALJ's evaluation of Plaintiff's pain testimony.

The Court finds the ALJ's second reason for discounting Plaintiff's credibility, that Plaintiff has not received the type of medical treatment one would expect for an individual claiming restrictive work limitations, to be

14cv2008

1    clear and convincing.  Plaintiff had arthroscopic surgery on his left knee

2    around 2002 or 2004 which apparently improved his symptoms, and

3    though he claims "on and off" pain since then, the record shows he did not

4    seek any evaluation or treatment until 2011, just prior to filing his

5    applications for DIB and SSI.  An "unexplained, or inadequately explained,

6    failure to seek treatment" is a relevant factor in assessing credibility of pain

7    testimony.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).  The ALJ

8    additionally noted Plaintiff only uses ibuprofen and Tylenol for pain relief,

9    and the little treatment he received was essentially routine and

10   conservative in nature.  (See Admin. R. at 13.)  Receiving only "minimal"

11   and "conservative" treatment is a valid reason to discredit a claimant's

12   symptom testimony.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

13        As for the ALJ's third stated reason for discounting Plaintiff's pain

14   testimony, although an ALJ may not disregard a claimant's testimony

15   "*solely* because it is not substantiated affirmatively by objective medical

16   evidence" (see Robbins, 466 F.3d at 883 [emphasis added]), the ALJ may

17   consider whether the alleged symptoms are consistent with the medical

18   evidence as one factor in his evaluation.  See Lingenfelter, 504 F.3d at

19   1040; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

20   ("Although lack of medical evidence cannot form the sole basis for

21   discounting pain testimony, it is a factor that the ALJ can consider in his

22   credibility analysis.")  Given the minimal medical evidence in the record, as

23   summarized above, the ALJ's determination that the record does not

24   support Plaintiff's allegations of disability is clear and convincing.

25        The ALJ's fourth proffered reason for discounting Plaintiff's symptom

26   testimony is two-fold:  that Plaintiff provided inconsistent testimony

27   regarding his past work, and that Plaintiff's impairment did not previously

28   prevent him from working strongly suggests it would not currently prevent

1   him from working.  (Admin. R. at 13-14.)  In his applications for DIB and

2   SSI, Plaintiff stated he had been unable to work since December 26, 2003.

3   (Id. at 160.)  He told the consultative examiner, Dr. Dao, that he had last

4   worked as a mover helper in 2004.  (Id. at 283.)  At the administrative

5   hearing, Plaintiff testified he had last worked in 2006 or 2007 as a seasonal

6   worker for moving companies, but then provided testimony he had worked

7   in 2011 as a bell ringer for the Salvation Army.  (Id. at 29-31.)  Plaintiff's

8   earning records reflected he worked in 2005, when he earned $6,171.72,

9   and then not again until 2011, when he earned $1,293.00 working for the

10  Salvation Army.  (Id. at 188.)[3]

11      Inconsistent statements and testimony can bear upon a claimant's

12  credibility.  See, e.g., Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir.

13  1999).  The record is not clear whether the contradiction between Plaintiff's

14  onset date and when he last performed work was the result of Plaintiff not

15  being completely truthful or a failure to remember dates.  However, the

16  ALJ's observation that Plaintiff was not previously prevented from working

17  despite the presence of his alleged impairment at approximately the same

18  level of severity is a clear and convincing reason to discredit Plaintiff's pain

19  testimony.

20      The fifth reason proffered by the ALJ for discounting Plaintiff's

21  credibility relates to the issue of whether his continuing unemployment is

22  actually due to medical impairments.  As the ALJ stated:

23          A review of the claimant's work history shows that the claimant
            worked only sporadically prior to the alleged disability onset
24          date, which raises a question as to whether the claimant's
            continuing unemployment is actually due to his medical
25          impairments.  The claimant testified that he seldom held a full
            time job because he has a felony record which makes it difficult

26

27          [3]At the conclusion of the administrative hearing, Plaintiff's attorney
    attempted to amend the alleged onset date to January 7, 2006.  (Admin. R. at
28  44.)  Although the ALJ accepted the amendment (see id.), his written decision
    still reflects a disability onset date of December 26, 2003 (id. at 9).

1
2

to be hired full time.  He was convicted of armed robbery more than 30 years ago.  The claimant stated that he has not applied for a full time job since 1986 or 1987.

3   (Admin. R. at 14.)  An ALJ may properly consider a claimant's work record

4   when weighing a claimant's credibility.  <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d

5   789, 792 (9th Cir. 1997).  Here, the ALJ could properly find Plaintiff's

6   testimony regarding the reasons he had not sought work and had been

7   unemployed for so long undermined his credibility and his claim that his

8   knee impairment prevented him from working.

9          An ALJ's assessment of pain severity and claimant credibility is

10   entitled to "great weight."  <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir.

11   1989).  The Court concludes the ALJ articulated sufficient clear and

12   convincing reasons supported by substantial evidence to discount Plaintiff's

13   subjective pain testimony.

14

15   **VII.  CONCLUSION**

16          For the reasons set forth above, the Court recommends Plaintiff's

17   motion for summary judgment be **DENIED** and Defendant's motion for

18   summary judgment be **GRANTED**.

19          This report and recommendation will be submitted to the Honorable

20   Cynthia A. Bashant, United States District Judge assigned to this case,

21   pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file

22   written objections with the Court and serve a copy on all parties on or

23   before **September 23, 2015**.  The document should be captioned

24   "Objections to Report and Recommendation."  Any reply to the Objections

25   shall be served and filed on or before **October 5, 2015**.  The parties are

26   advised that failure to file objections within the specified time may waive

27   / /

28   / /

13

the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 8, 2015

Jan M. Adler
U.S. Magistrate Judge